# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2584 | **DATE** | 3/12/2003 |
| **CASE TITLE** | Gelco Corp vs. C&K Auto Imports, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 4/1/2003 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We grant Gelco's motion (Doc 36-1) for summary judgment and deny C&K and Sauer's motion (Doc 42-1) for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 13 2003 | |
| | Notified counsel by telephone. | | date docketed | 48 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 MAR 12 AM 11:47 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GELCO CORPORATION f/k/a General Electric )
Capital Auto Financial Services, Inc., a Delaware )
corporation, )
 )
 )
Plaintiff, )
 )
vs. ) 02 C 2584
 )
C&K AUTO IMPORTS, INC. and DORON )
SAUER, )
 )
 )
Defendants. )

DOCKETED
MAR 1 3 2003

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Plaintiff Gelco Corporation's, f/k/a General Electric Capital Auto Financial Services, Inc., ("Gelco" or "GECAL") motion for summary judgment and Defendant C&K Auto Imports, Inc. ("C&K") and Doron Sauer's ("Sauer") motion for summary judgment. For the reasons set forth below, we grant Gelco's motion for summary judgment and, accordingly, deny C&K and Sauer's motion for summary judgment.

## BACKGROUND

On or about March 14, 1996, Gelco and C&K entered into a Dealer Lease Plan Agreement ("Dealer Agreement") under which Gelco agreed to buy leases and leased cars from C&K. Simultaneously and in conjunction with the Dealer Agreement, defendant Doron Sauer executed a personal guaranty in favor of Gelco guaranteeing payments that C&K might eventually owe to Gelco under the Dealer Agreement. In the event of C&K's default in the performance of the Dealer Agreement, Sauer would pay all the fees, losses, and expenses paid or incurred by Gelco. Gelco purchased a car from C&K in June 1999 and another car in November 1999. Along with each of these transactions C&K issued guarantee letters stating that C&K would present to Gelco properly executed titles to the vehicles and, if C&K failed to do so, Gelco would be entitled to demand payoff and reassignment of the leases back to C&K. Shortly after these transactions, both the leases defaulted. When Gelco tried to collect, the named lessees claimed to have been victims of identity fraud. The individuals who leased the cars at the dealership had stolen the information, used it to obtain the leases, and absconded with the vehicles. Gelco hired an investigator to locate the two cars and found out that one vehicle had been retitled to the City of New York and the other vehicle had been reported stolen. Gelco brought a breach of contract claim against

C&K and Sauer seeking to recover its losses from the lapsed leases and the missing cars.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the nonmoving party and draw all reasonable inferences that favor the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Breach of Contract Claim

Gelco argues that, under the unambiguous language of the Dealer Agreement and guarantee letters, C&K breached its contractual obligation by not presenting properly executed titles for either of the two vehicles. C&K claims that it satisfied its obligations under the Dealer Agreement and guarantee letters by preparing and executing all of the documents necessary for the assignment and issuance of the titles to Gelco and delivering those documents to the State of New York Department of Motor Vehicles. Section 6 of The Dealer Agreement states in pertinent part:

> 6. DEALER'S SPECIFIC WARRANTIES FOR EACH LEASE AND LEASED VEHICLE. As to each lease and leased vehicle purchased by GECAL, DEALER warrants that as of the date GECAL purchases the lease and leased vehicle:
> a. DEALER has, and has assigned to GECAL, good and sole title to the lease and leased vehicle both of which are free and clear from all liens, claims and encumbrances . . .

-4-

. . .

> j. DEALER has titled and registered the leased vehicle, or has made application therefore, as instructed by GECAL.
> k. The lease transaction complies with the requirements of Section 2.a. and Section 3.a.

C&K argues that only a Department of Vehicles can issue a title to a car, and therefore there was no way for C&K to comply with the "has titled and registered" language of Section 6(j). C&K thus claims that the only obligation imposed on C&K by Section 6(j) was that it make application for the titles by filing the proper vehicle transfer documents with the State of New York Department of Motor Vehicles. Under Section 6(k) C&K is obligated to make sure that the lease transaction complies with Section 2(a)(2) which requires that C&K "provide[] GECAL with all other documentation and any other information which GECAL may require in connection with the lease transaction." In addition we note that in Section 8(b) of the Dealer Agreement C&K agrees to pay the repurchase price for a vehicle "regardless of whether or not the leased vehicle is available to DEALER . . . ."

We think that there is sufficient indication in the Dealer Agreement of C&K's willingness to undertake the risk that properly executed titles might not be issued to Gelco by the State of New York and of a willingness to repurchase the vehicles if that problem arose. C&K was obligated to honor Gelco's demand for payoff and reassignment of both the leases because it failed to provide the titles to Gelco. C&K refused to honor the demand. Consequently, demand was made upon Sauer to honor

his personal guaranty as guarantor of C&K's obligations. Sauer also refused to honor his guaranty. Therefore, both C&K and Sauer are liable for breaching their contractual obligations to Gelco.

II. Laches Defense

C&K asserts the defense of laches. Gelco argues that, since it seeks only damages, laches, being an equitable defense, is not an appropriate defense in this case. Laches is an equitable defense that applies when it would be unfair to allow a claim to go forward because the plaintiff unjustly delayed bringing the claim. *Zalazny v. Lyng*, 853 F.2d 540, 541 (7th Cir. 1988). Under Illinois law laches has generally been considered a defense that is only applicable in cases where equitable relief is sought. *Maksym v. Loesch*, 937 F.2d 1237, 1248 (7th Cir. 1991). However, the distinction between the legal and equitable character of defenses in American jurisprudence is rapidly diminishing. *See In re United States Brass Corp.*, 110 F.3d 1261, 1267 (7th Cir. 1997) (noting that ever since equity and law were merged in the federal courts that the courts have had a "free hand" in importing equitable defenses into suits at law."); *Maksym*, 937 F.2d at 1248 (indicating that equitable defenses are no longer as isolated from legal actions as they once were). The Illinois courts have carved many exceptions into the general rule restricting the laches defense to actions seeking equitable relief. *See id.* (citing *Bays v. Mathews*, 440 N.E.2d 142, 145 (Ill. App. Ct. 1982)); *Landau and Assocs., P.C. v. Kennedy*, 634 N.E.2d 373, 376 (Ill. App. Ct. 1994) (indicating that Illinois state decisions have allowed the defense of laches to be asserted in some types

of legal actions). Although there are exceptions to the general rule for laches, courts have usually made those exceptions in what were essentially "quasi-equitable suits." *Maksym*, 937 F.2d at 1248. A contract action for damages is not among the types of actions that is specifically carved out as an exception by Illinois law. *Id.*; *Landau and Assocs., P.C.*, 634 N.E.2d at 376. Therefore, the laches defense is not an appropriate defense in this action.

Even were we to consider the laches defense applicable in this case in light of the general trend towards removing the barriers between equitable and non-equitable claims and defenses, the result would ultimately be the same. For the defense of laches a defendant must show: 1) a lack of diligence by the plaintiff, and 2) prejudice to the defendant as a result of the delay. *Zelazny*, 853 F.2d at 541. In the case before us Gelco did not contact C&K and make a demand upon C&K to repurchase the two leased vehicles until February 13, 2002, which was approximately two and a half years after Gelco acquired the vehicles and vehicle leases. Gelco filed suit on April 10, 2002. Two and a half years does not appear to be an undue delay in light of the fact that the statue of limitations on a breach of a written contract in Illinois is ten years. 735 ILCS 5/13-206. Also, Gelco hired a detective agency to try and locate the vehicles. Thus, C&K has not shown a lack of diligence by Gelco.

Neither has C&K shown that it suffered any prejudice. C&K merely speculates in its answer to Gelco's motion for summary judgment that, had Gelco informed C&K sooner of the identity fraud, C&K would have been able to recover the lost vehicles.

C&K cites no evidence or admitted facts to support its assertion that it was prejudiced by Gelco's delay in bringing suit after discovering the identity fraud. For instance, C&K claims that, had it learned of the fraud sooner, it could have filed an insurance claim. However, C&K has not presented this court with the insurance policy or any sort of affidavit to verify that its allegations are accurate.

C&K voluntarily entered into the business relationship and the accompanying agreements with Gelco. There is nothing unfair about holding C&K to its bargain. If C&K wanted to shield itself from the risk of having to repurchase the vehicles from Gelco despite being unable to locate the vehicles, C&K could have included a provision in the Dealer Agreement disclaiming any liability in that instance or included a limitations period for Gelco to request repurchases. Instead C&K agreed to supply Gelco with proper titles and even took affirmative steps to guarantee that it would obtain titles for the vehicles and promise Gelco a remedy if the titles were not obtained.

## CONCLUSION

Based on the foregoing analysis, we grant Gelco's motion for summary judgment and deny C&K and Sauer's motion for summary judgment.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: MAR 12 2003